```
             IN THE UNITED STATES DISTRICT COURT
                  FOR THE DISTRICT OF HAWAII

UNITED STATES OF AMERICA,     )   CR. NO. 21-00109 SOM
                              )
          Plaintiff,          )   ORDER GRANTING THE PORTIONS
                              )   OF THE UNITED STATES'
     vs.                      )   MOTIONS IN LIMINE NOS. 1
                              )   AND 2 ADDRESSING
                              )   REFERENCES TO SUICIDE
JOSE ELIAS CAMACHO,           )
                              )
          Defendant.          )
_____)
```

**ORDER GRANTING THE PORTIONS OF THE UNITED STATES'MOTIONS IN LIMINE NOS. 1 AND 2 ADDRESSING REFERENCES TO SUICIDE**

Tyler Hardy died after allegedly consuming pills distributed by Defendant Jose Elias Camacho.  Before the court are the United States' Motion in Limine No. 1 and Motion in Limine No. 2, both seeking exclusion of arguments and evidence at trial relating to Hardy's alleged suicidal thoughts.  Having considered the nuances of the issue before this court, the court grants the Government's motions to exclude any suicide evidence.

I.        **BACKGROUND SUMMARY.**

The following background summary combines factual allegations set forth by the Government and Camacho that are relevant to the instant motion.  These allegations are not facts, and the court's recitation here should not be construed as bearing on the veracity of the allegations.

On the morning of August 27, 2020, Camacho allegedly sold five pills to Hardy, which Camacho allegedly believed

contained oxycodone.  ECF No. 125, PageID #s 576, 579.  Shortly after the sale, a co-worker found Hardy collapsed on the ground and called 911.  *Id.* at PageID # 576.  When emergency medical services arrived, Hardy was unconscious, had a low breathing rate, and was taking shallow breaths.  *Id.*  The medics administered oxygen, and Hardy regained consciousness.  *Id.*  He was then taken to the hospital.  *Id.*  While in transport, Hardy told the medics that he had taken oxycodone that morning.  *Id.*

Later that day, Hardy discharged himself from the hospital after receiving additional treatment.  *Id.*  He returned to work, where he allegedly purchased five more pills from Camacho.  *Id.*

The following morning, Hardy's mother discovered Hardy dead at their home.  *Id.*  An autopsy indicated that his cause of death was acute intoxication with fentanyl, methamphetamine, and diphenhydramine (commonly known as Benadryl).  *Id.* at PageID # 577.  The autopsy pathologist concluded that his manner of death was an "accident."  ECF No. 126, PageID # 588.

A few days after Hardy's death, Camacho was allegedly told that Hardy had committed suicide by a suspected heroin overdose.  ECF No. 138, PageID # 697.  Hardy allegedly became "guilt-ridden" and "depressed" after being charged with a number of serious state offenses, including negligent homicide in the first degree.  ECF No. 126, PageID # 587.  The defense intends

2

to call Hardy's father to testify at Camacho's trial that Hardy was suicidal. *Id.* at PageID #s 587-88. No suicide note was found. *Id.* at PageID # 588.

A few months after Hardy's death, law enforcement officials learned that Camacho had sold pills to Hardy on the days of his overdoses. ECF No. 125, PageID # 577. Officers used a cooperating source's phone to arrange a purchase of pills from Camacho. *Id.* The next day, officers stopped Camacho as he left his home to conduct the deal. *Id.* They searched him and found fifty-three "counterfeit oxycodone" pills. *Id.* They also recovered four hundred pills from his home, in addition to cash and twenty-eight grams of methamphetamine. *Id.* at PageID #s 577-78. Testing later showed that the pills recovered from Camacho's person and home contained a mixture of acetaminophen and fentanyl. *Id.* at PageID # 577.

After Camacho was arrested, he waived his *Miranda* rights and agreed to answer questions. *Id.* at PageID # 578. Relevant to the instant motion, Camacho admitted that he sold ten pills to Hardy and provided specific details of the sale. *Id.* Camacho explained that, in the course of arranging for the second purchase of pills, Hardy told Camacho that he had just gotten out of the hospital. *Id.* During the sale, Camacho noticed that Hardy was wearing a hospital wrist band. *Id.* When asked by Camacho, Hardy denied that he planned to take the pills

3

himself and said that he was reselling them. *Id.* Camacho told the police that he would not have sold the pills to Hardy if Hardy had said that he planned to take the pills. *Id.*

Ultimately, Camacho was charged with violations of 21 U.S.C. § 841(a)(1), § 841(b)(1)(C), and § 841(b)(1)(B). ECF No. 1. Counts 1 and 2 of the indictment charge Camacho with the § 841(b)(1)(C) enhancement, which imposes a mandatory minimum sentence of not less than twenty years and a maximum of life in prison when "death or serious bodily injury results from the use of [the distributed] substance." Because this enhancement increases the minimum and maximum sentence to which Camacho is exposed, "it is an element that must be submitted to the jury and found beyond a reasonable doubt." *Burrage v. United States*, 571 U.S. 204, 210 (2014). The enhancements charged in Counts 1 and 2 of Camacho's indictment have two principal elements: "(i) knowing or intentional distribution of [a controlled substance], § 841(a)(1), and (ii) death caused by ('resulting from') the use of that drug, § 841(b)(1)(C)." *Id.*

At a pretrial conference, Camacho's counsel indicated that the defense intends to introduce evidence and argue at trial that Camacho cannot be found responsible for Hardy's death because Hardy was allegedly suicidal. *See* ECF No. 126, PageID # 587; ECF No. 139, PageID # 702. According to defense counsel, the "cause" of Hardy's death is the "crux" of Camacho's defense

4

because Camacho "admitted complicity [in the distribution of the pills] on none less than three separate occasions." ECF No. 139, PageID # 702.

The Government subsequently filed motions in limine to exclude arguments or evidence about Hardy's alleged suicide. ECF No. 126. This issue, which the parties and this court refer to as the "suicide defense theory," essentially boils down to what proof of causation is required to trigger the enhanced penalty under § 841(b)(1)(C). *See* ECF No. 126, PageID #s 590-92; ECF No. 139, PageID # 702.

The Government contends that the suicide defense theory is "nothing more than a thinly veiled request for nullification by suggesting that [Camacho's] inability to foresee [Hardy's] death should be considered by the jury in determining [Camacho's] guilt or innocence." ECF No. 126, PageID # 591.

The defense disputes the Government's attempt to prohibit Camacho "from arguing that suicide is the driving factor in this case and the sale of pills was not the but-for cause of [Hardy's] death." ECF No. 139, PageID # 702. Camacho points to *Burrage*, which, without actually holding that both actual and proximate cause are required to trigger the enhanced penalty, noted that it appeared to be generally the case that both types of causation are required. *Id.* (citing *Burrage*, 571

5

U.S. at 210). According to the defense, if "Camacho can establish that [Hardy] was suicidal, then it is the fact finders' duty to decide whether that fact was indeed the but-for or 'proximate cause' of death in this case."[1]  *Id.* at PageID # 703.

II.     DISCUSSION.

The federal courts of appeal are in near unanimous agreement that proof of proximate causation is not required to trigger the enhanced penalty under § 841(b)(1)(C).  *See, e.g.*, *United States v. Jacobs*, 21 F.4th 106, 113-15 (3d Cir. 2021); *United States v. Jeffries*, 958 F.3d 517, 519-24 (6th Cir. 2020), *cert. denied*, 141 S. Ct. 931 (2020); *United States v. Harden*, 893 F.3d 434, 447–49 (7th Cir. 2018), *cert. denied*, 139 S. Ct. 394 (2018); *United States v. Alvarado*, 816 F.3d 242, 249–50 (4th Cir. 2016), *cert. denied*, 580 U.S. 1001 (2016); *United States v. Burkholder*, 816 F.3d 607, 616, 616 n.8 (10th Cir. 2016), *cert. denied*, 580 U.S. 1057 (2017); *United States v. Webb*, 655 F.3d 1238, 1254-55 (11th Cir. 2011); *United States v. De La Cruz*, 514

---

[1]  As the Third Circuit explained in relation to § 841(b)(1)(C), "[b]ut-for causation means that a result can be traced back to a triggering action—no matter how far down the chain of causation you have to go." *United States v. Jacobs*, 21 F.4th 106, 113 n.8 (3d Cir. 2021). The standard for actual cause in the context of § 841(b)(1)(C) is but-for causation. "In contrast, proximate causation cuts the causal chain at foreseeability." *Jacobs*, 21 F.4th at 113 n.8. At the hearings on the motions in limine, defense counsel recognized the distinction between "but-for" causation and "proximate cause."

6

F.3d 121, 137-38 (1st Cir. 2008); *United States v. Houston*, 406 F.3d 1121, 1124-25 (9th Cir. 2005); *United States v. Carbajal*, 290 F.3d 277, 283-85 (5th Cir. 2002); *United States v. Soler*, 275 F.3d 146, 152 (1st Cir. 2002); *United States v. McIntosh*, 236 F.3d 968, 972-73 (8th Cir. 2001)(abrogated on other grounds by *Burrage*, 571 U.S. at 204);[2] *United States v. Robinson*, 167 F.3d 824, 830-32 (3d Cir. 1999); *United States v. Patterson*, 38 F.3d 139, 145-46 (4th Cir. 1994); *but see United States v. Hatfield*, 591 F.3d 945, 950-51 (7th Cir. 2010) (expressing in dicta "misgivings about interpreting 'results from' in the statute to impose strict liability").

This court focuses on the Ninth Circuit's guidance in *United States v. Houston*, 406 F.3d 1121. The defendant in that case appears to have alleged that the decedent committed

---

[2] A headnote in *Burrage* states that *Burrage* abrogated *McIntosh*. However, the opinion itself does not appear to do so. *McIntosh* is mentioned just once in the opinion, in the description of the procedural history. The Court stated that the Eighth Circuit had affirmed the district court's actual cause instruction, consistent with the Eighth Circuit's decision in *United States v. Monnier*, 412 F.3d 859, 862 (8th Cir. 2005). *Burrage*, 571 U.S. at 208. The Court then noted that the Eighth Circuit had quoted *McIntosh* in concluding that the district court "did not correctly state the law because a showing of 'proximate cause' is not required." *Id. Burrage* did not reach the question of proximate cause because it reversed the defendant's conviction based on the district court's erroneous actual cause instruction. *Id.* at 208-10, 219. In this way, the opinion abrogated *Monnier*, but it is not clear that it abrogated *McIntosh* on the proximate cause issue. *See United States v. Jeffries*, 958 F.3d 517, 520 (6th Cir. 2020) (citing *McIntosh* as "abrogated on other grounds by *Burrage*").

suicide, and the Ninth Circuit held that "proximate cause, at least insofar as it requires that the death have been foreseeable, is not a required element" for application of the serious bodily injury or death enhancement under § 841(b)(1)(C). *Id.* at 1122, 1125. The Ninth Circuit cited approvingly decisions from other federal circuit courts that had reached that conclusion. *Id.* at 1124 (citing *Soler*, 275 F.3d at 152; *McIntosh*, 236 F.3d at 972–73; *Robinson*, 167 F.3d at 830–32; *Patterson*, 38 F.3d at 145–46).

The court quoted the following observation by the Fourth Circuit in *Patterson*:

> The statute puts drug dealers and users on clear notice that their sentences will be enhanced if people die from using the drugs they distribute. . . . Where serious bodily injury or death results from the distribution of certain drugs, Congress has elected to enhance a defendant's sentence regardless of whether the defendant knew or should have known that death would result.

*Id.* at 1124 (quoting *Patterson*, 38 F.3d at 145). However, the Ninth Circuit "stop[ped] short of ascribing to the First Circuit's 'strict liability' language" because it recognized that "there may be some fact scenarios in which the distribution of a controlled substance is so removed and attenuated from the resulting death that criminal liability could not be imposed within the bounds of due process." *Id.* at 1124 n.5.

A review of what was actually on appeal to the Ninth Circuit in *Houston*, as well as subsequent developments in the

8

caselaw, are relevant to whether *Houston* precludes the raising of a suicide defense theory in the context of the § 841(b)(1)(C) enhancement.

The issue of foreseeability does not appear to have been expressly raised before the district court in *Houston*. The Ninth Circuit explained in a footnote:

> It is not completely clear that in instructing the jury that proximate cause was a necessary element, the district court was requiring the jury to determine that [the decedent's] death have been foreseeable to [the defendant]. This is largely because the term proximate cause is not well defined. . . . The district court's further instruction about proximate cause, that it was a cause "which played a substantial part in bringing about [the decedent's] death, so that the death was a direct result or a reasonably probable consequence of the defendant's act[,]" did not specifically mention foreseeability, except to the extent that a foreseeability requirement is inherent in the "reasonably probable consequence" language. However, proximate cause is often interpreted to include a requirement that the resulting harm was foreseeable to the wrongdoer.

*Id.* at 1123 n.4 (internal citations omitted).

Indeed, evidence of the alleged suicide might not have been prominently raised before the district court. On appeal, suicide was not even mentioned in either the defendant's opening brief or the Government's answering brief. *See* Opening Brief of Defendant-Appellant, *available at* 2004 WL 2297769; Brief of Appellee United States of America, *available at* 2004 WL 2731211. Suicide was mentioned in the defendant's reply brief as an illustration of an unforeseeable intervening act that would cut

9

the chain of proximate causation in a tort action.  Optional Reply Brief of Defendant-Appellant, at *7-8, *available at* 2004 WL 2966692.  After citing cases illustrating that proposition, the defendant reviewed the facts of the decedent's death that suggested that her death was either an accidental overdose or a suicide.  The defendant concluded the brief discussion of suicide by stating that, either way, the decedent's "actions and decisions cannot be considered reasonably foreseeable."  *Id.* at *8.

The *Houston* opinion mentions the alleged suicide only once, in the second sentence of the introduction.  *Houston*, 406 F.3d at 1122 ("Houston challenges the sufficiency of the evidence supporting her conviction, and particularly protests being held responsible for a death that she claims was an unforeseeable suicide.").  Given the lack of a developed record as to the decedent's alleged suicide, it appears that *Houston* did not meaningfully grapple with a suicide defense theory like that expressly proffered by Camacho.

Nearly a decade after *Houston*, the Supreme Court decided *Burrage*, 571 U.S. 204.  ECF No. 139, PageID #s 702-03.  In *Burrage*, the decedent, a long-time drug user, died after injecting heroin distributed by the defendant and taking a variety of other drugs.  571 U.S. at 206.  Medical experts concluded that the heroin was a "contributing factor" without

10

which, one expert opined, the decedent's death would have been "[v]ery less likely." *Id.* at 207. The district court refused the defendant's jury instructions that required proof of but-for and proximate causation. *Id.* at 207–08. The jury was instead instructed that, under § 841(b)(1)(C), the Government only had to prove that the heroin distributed by the defendant was a "contributing cause" of death. *Id.* at 208.

In analyzing the district court's causation instruction, the Supreme Court began by explaining:

> The law has long considered causation a hybrid concept, consisting of two constituent parts: actual cause and legal cause. When a crime requires not merely conduct but also a specified result of conduct, a defendant generally may not be convicted unless his conduct is both (1) the actual cause, and (2) the legal cause (often called the proximate cause) of the result.

*Id.* at 210 (internal quotations and citations omitted).[3] The Court's decision only spoke to the actual cause requirement, *id.* at 208, 210, which is not at issue in the instant motions in limine. The Supreme Court did not reach the question of proximate cause because it reversed the defendant's conviction

---

[3] The Supreme Court cited H. L. A. Hart & A. M. Honore, *Causation in the Law* 104 (1959); 1 W. LaFave, *Substantive Criminal Law* § 6.4(a), pp. 464–66 (2d ed. 2003); and Model Penal Code § 2.03, p. 25 (1985). These sources do not speak to causation with respect to penalties, but rather speak to causation in regard to the bifurcation of causal questions in general (Hart & Honore), crimes defined to require a specific result (LaFave), and causal relationships between conduct and result (Model Penal Code).

11

based on the district court's failure to give a but-for cause instruction. *Id.* at 210, 219.

Notwithstanding *Burrage*'s statement that, in general, both actual and proximate cause are required for a conviction, appellate courts have continued to conclude post-*Burrage* that proximate cause is not required for a conviction under § 841(b)(1)(C). *E.g.*, *Jacobs*, 21 F.4th at 113-15; *Jeffries*, 958 F.3d at 519-24; *Harden*, 893 F.3d at 447–49; *Alvarado*, 816 F.3d at 249–50.

The Third Circuit's analysis in *United States v. Jacobs*, 21 F.4th 106, reconciles *Burrage* and the lack of a proximate cause requirement for a § 841(b)(1)(C) enhancement. The *Jacobs* defendant had argued that *Burrage* effectively overruled precedents that had concluded that the plain language of § 841(b)(1)(C) did not require that the decedent's death have been reasonably foreseeable. *Jacobs*, 21 F.4th at 114. The Third Circuit disagreed, explaining that it did not read *Burrage*'s general observation that a criminal conviction requires both actual and proximate cause "so broadly" as to overrule circuit precedent. *Id.* The Third Circuit noted that the Supreme Court "never reached whether § 841 contains a proximate cause requirement." *Id.*

The Third Circuit also rejected the defendant's reliance on *Paroline v. United States*, 572 U.S. 434 (2014),

12

which involved a child pornography statute that, unlike § 841, contained an express proximate cause requirement.  *Jacobs*, 21 F.4th at 114.  The Third Circuit reasoned that, despite *Paroline*'s general observation that the "concept of proximate causation is applicable in both criminal and tort law," *Paroline* "did not import a proximate cause requirement into § 841 or discuss that statute at all."  *Id.*  The court concluded that "[n]either *Burrage*'s nor *Paroline*'s general pronouncements about proximate cause in criminal statutes are enough to overrule our precedent.  So we continue to follow [the precedent] until reconsidered by our Court en banc or undermined by the Supreme Court."  *Id.*

In *United States v. Jeffries*, the Sixth Circuit conducted a statutory analysis and similarly concluded that proof of proximate causation is not required for a conviction under section 841(b)(1)(C).  958 F.3d at 519-24.  The Supreme Court denied certiorari.  141 S. Ct. 931 (2020).

*Burrage* does not appear to have overruled the Ninth Circuit's holding in *Houston* that it is error to require proof of proximate cause under § 841(b)(1)(C).  Indeed, the Ninth Circuit in unpublished dispositions has treated *Houston* as continuing to be good law.[4]  *See United States v. Gaffney*, No.

---

[4]  In *Zanuccoli v. United States*, 459 F. Supp. 2d 109 (D. Mass 2006), the district court denied a motion for relief brought

13

20-50037, 2021 WL 4893576, at *1 (9th Cir. Oct. 20, 2021) ("'[P]roximate cause is not a required element for conviction and sentencing under § 841(b)(1)(C).' *United States v. Houston*, 406 F.3d 1121, 1124-25 (9th Cir. 2005).  The Supreme Court's decision in *Burrage v. United States*, 571 U.S. 204 (2014), holding that but-for causation is required, did not call into question the holding or reasoning in *Houston*.").

In *United States v. Pearson*, No. 20-10239, 2022 WL 807411 (9th Cir. Mar. 16, 2022), the Ninth Circuit in its memorandum disposition did not meaningfully describe the defendant's argument on appeal.  It similarly did not detail why it cited *Houston*, but that the case was indeed cited suggests that the Ninth Circuit panel considered *Houston* to be good law.

The court notes the defense's concern that continuing to follow *Houston* could have a broad impact on conduct far removed from the purpose of the statute.  In *United States v. Hatfield*, the Seventh Circuit expressed "misgivings" about

---

under 28. U.S.C. § 2255.  The petitioner had received an enhanced sentence based on a drug user's death.  The § 2255 motion was based in part on defense counsel's alleged failure to address a letter indicating that the deceased user "may have attempted suicide by overdosing on heroin." *Id.* at 112.  The district court rejected that argument on the ground that "[s]uicide through heroin overdose meets the statute's terms, because it is a 'death resulting from the use of' the heroin, irrespective of the victim's state of mind." *Id.*  The court applied the First Circuit's "strict liability" analysis, which the Ninth Circuit has declined to adopt, *see Houston*, 406 F.3d at 1124 n.5.

14

interpreting "results from" in the statute to essentially impose strict liability. 591 F.3d at 950. The court, opining that such an interpretation "could lead to some strange results," set forth the following hypothetical:

> Suppose that, unbeknownst to the seller of an illegal drug, his buyer was intending to commit suicide by taking an overdose of drugs, bought from that seller, that were not abnormally strong, and in addition the seller had informed the buyer of the strength of the drugs, so that there was no reasonable likelihood of an accidental overdose.

*Id.* at 950. The motions in limine and corresponding oppositions in this case allege facts that are not so different from this hypothetical.

In *Burrage*, the Supreme Court noted that "where A shoots B, who is hit and dies, we can say that A actually caused B's death, since but for A's conduct B would not have died." 571 U.S. at 211 (quotation marks and internal citation omitted). The Court went on to explain that the "same conclusion follows if the predicate act combines with other factors to produce the result, so long as the other factors alone would not have done so—if, so to speak, it was the straw that broke the camel's back." *Id.* Therefore, the Court concluded, "if poison is administered to a man debilitated by multiple diseases, it is a but-for cause of his death even if those diseases played a part in his demise, so long as, without the incremental effect of the

15

poison, he would have lived." *Id.* (citing *State v. Frazier*, 98 S.W.2d 707, 712-13 (1936)).

Under this reasoning, a suicide defense theory would need to address the timing of the drug's effect. Put differently, the defense would need to show that, without the drug distributed by the defendant, the decedent would still have committed suicide by other means at the same time.

This court notes that, at the time the Supreme Court decided *Burrage*, it was aware of circuit court opinions holding that the Government did not have the burden of proving proximate cause in seeking an enhanced penalty under § 841(b)(1)(C). *See Jeffries*, 958 F.3d at 520. Notably, in the years since *Burrage*, the Supreme Court has repeatedly denied certiorari petitions raising the proximate cause issue in the context of § 841(b)(1)(C). *E.g.*, *Jeffries*, 958 F.3d at 519-24, *cert. denied*, 141 S. Ct. 931; *Harden*, 893 F.3d at 447-49, *cert. denied*, 139 S. Ct. 394; *Alvarado*, 816 F.3d at 249-50, *cert. denied*, 580 U.S. 1001. Two of the cases in which the Supreme Court denied certiorari cited *Houston* for the proposition that § 841(b)(1)(C) does not require proof of proximate causation. *Jeffries*, 958 F.3d at 520; *Harden*, 893 F.3d at 447. Thus *Houston* appears to this court to continue to be controlling.

Accordingly, the defense is precluded from arguing that Hardy's death should not or cannot be found to have

16

resulted from use of drugs distributed to him by Camacho because Hardy died from suicide.  With respect to Camacho's statements to police that he was told that Hardy had committed suicide by heroin overdose, the parties are directed to confer on how best to handle that evidence in light of this ruling.  The parties must submit to the court their joint proposal in that regard or their differing proposals by May 15, 2024.

### III.     CONCLUSION.

The court GRANTS the portions of the Government's Motions in Limine Nos. 1 and 2 seeking to prohibit argument and evidence by Hardy's father that Hardy's death was a suicide.

The parties are DIRECTED to confer with respect to Camacho's statements to the police that Hardy committed suicide by a heroin overdose.  The parties must inform the court of their joint proposal or their differing proposals by May 15, 2024.

IT IS SO ORDERED.

DATED:   Honolulu, Hawaiʻi, May 8, 2024.



/s/ Susan Oki Mollway
Susan Oki Mollway
United States District Judge

*United States v. Jose Elias Camacho*, Cr. No. 21-00109 SOM; ORDER GRANTING THE PORTIONS OF THE UNITED STATES' MOTIONS IN LIMINE NOS. 1 AND 2 ADDRESSING REFERENCES TO SUICIDE.